**Keith C. MEAD, Appellant,**

v.

**Robert A. McKIRNAN, Appellee.**

**Appeal No. 78–542.**

United States Court of Customs and Patent Appeals.

Oct. 26, 1978.

Rehearing Denied Dec. 7, 1978.

Richard R. Trexler, Chicago, Ill. (Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., Chicago, Ill.), atty. of record, for appellant; Charles L. Sturtevant, Arlington, Va., of counsel.

Edward M. Keating, Chicago, Ill. (Kinzer, Plyer, Dorn & McEachran, Chicago, Ill.), atty. of record, for appellee.

Before RICH, BALDWIN, MILLER, KASHIWA * and FORD,* Judges.

\* The Honorable Shiro Kashiwa, United States Court of Claims, and the Honorable Morgan Ford, United States Customs Court, sitting by designation.

---

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) making a pro forma award of "priority" of invention to the junior party McKirnan. We affirm.

Mead is involved on application serial No. 430,957, entitled "Child Resistant Overcap for Aerosol or Like Containers," filed January 4, 1974, as a continuation of application serial No. 185,339, filed September 30, 1971,[1] which was a continuation-in-part of application serial No. 81,228, filed October 16, 1970. Mead was accorded senior status on the basis of the September 30, 1971, filing date.

Junior party McKirnan is involved on his patent No. 3,854,622, issued December 17, 1974, on application serial No. 312,284, filed December 5, 1972, entitled "Childproof Cover." Mead took no testimony, relying solely on his filing date.

Mead copied McKirnan's patent claims 1–6 and they are the counts in interference. They read (emphasis ours):

*Count 1*

A childproof cover for a container such as an aerosol container having a roof, a circular collar located on said roof with said collar having an undersurface positioned above said roof, said cover being formed of a flexible plastic and including: a circular top, and outer skirt depending from said circular top, an inner skirt coaxial with said outer skirt and also depending from said top, a *pair of lips* projecting inwardly from the lower end of said inner skirt and positioned to engage the undersurface of said circular collar when said cover is positioned on said container, *said lips being spaced from and located opposite each other, a pair of slits* formed in said inner skirt and extending from the lower edge thereof towards the circular top with said slits being located generally diametrically of each other and between said lips, and

*a pair of webs* connecting said outer and inner skirts with said webs positioned relative to said slits so that forces inwardly applied to opposite sides of said outer skirt at the lower edge thereof adjacent said slits will cause distortion of said outer skirt and radially outward movement of said webs which in turn will cause distortion of said inner skirt and *release of said lips from engagement* with the undersurface of said circular collar.

*Count 2*

The childproof cover of count 1 in which said webs are located at right angles to said slits.

*Count 3*

The childproof cover of count 1 in which *indicia* indicating pressure applying areas are formed on the exterior of said outer skirt adjacent the lower edge thereof with said indicia positioned at right angles to said ribs.

*Count 4*

The childproof cover of count 1 in which said *indicia are aligned with said slits.*

*Count 5*

The childproof cover of count 1 in which additional webs are provided to connect the inner and outer skirts with said ribs being arranged in pairs located on opposite sides of each of said webs.

*Count 6*

The childproof cover of count 1 in which said lips are arcuate shaped and each extends through an arc less than that of its portion of said inner skirt.

McKirnan's Figs. 2 and 3 with added notes will assist in understanding this discussion.

[See following illustration.]

---

1. Now patent No. 3,802,607.

fig.2.

fig.3.

35--slits [or slots
37--lips

39,41--webs
45--indicia [areas for
        applying pressure]

### Background

Before McKirnan joined Knight Engineering & Molding Company (Knight) as president in July 1970, Knight had developed a tamper-proof cap which an adult could remove only by use of a tool or instrument. This cap comprised four webs connecting the inner and outer skirts, a continuous lip on the inner skirt, and a slot running the entire length of the inner skirt, and is the subject of the U.S. Patent No. 3,870,187[2] to Bennett, president of Knight before McKirnan's arrival.

When McKirnan began at Knight in July 1970, he almost immediately directed the experimental work toward redesigning Bennett's tamper-proof cap to produce a child resistant one, supposedly removable by an adult, but not a child, without a tool. It was he who discovered that Bennett's tamper-proof cap could be removed not only by prying, but also by squeezing. Further, McKirnan conceived the use of two slots in the inner skirt and indicia on the outer skirt about July 15, 1970.

On September 16, 1970, Bennett, then sales manager of Knight, met with appellant Mead of Dow Chemical Company (Dow) to discuss a cap for Dow Oven Cleaner. Bennett testified that he told Mead about Knight's study of squeezing off the cap and showed him how slots were to be cut.

No later than October 4, 1970, McKirnan had revealed his conception of slots and indicia to Blackwell, a Knight employee. At a December 8, 1970 meeting with Dow personnel, the Knight representatives disclosed the complete conception of and suggested modifications to the childproof cap required for use with Dow dispensers. Dow's Mead and Potter contributed neither any elements of the cap nor any changes thereto. Thereafter, on December 23, 1970, Dow issued a purchase order release indicating knowledge of the cap and approval of changes discussed at the December meeting.

From January to August 1971, Knight varied slot lengths and the inner skirt width to determine an optimally fitting cap for Dow. However, Dow was dissatisfied with the results and abandoned the childproof cap project with Knight in November 1971.

In July 1972, McKirnan revived a cap he apparently had produced as a mock-up in September 1971, having two additional webs, for a total of six, and segmented lips (as in Fig. 3, supra). This cap was tested for compliance with Federal Food and Drug

---

2. Issued March 11, 1975, on application No. 296,515, filed October 11, 1972, entitled "Childproof Aerosol Cap," a continuation of serial No. 81,260, filed October 16, 1970.

Administration poison prevention packaging standards, accepted by Dow, and eventually supplied to Dow in 1973 for use with oven cleaner dispensers.

*Issue*

McKirnan raised the question of originality, charging Mead with deriving the complete invention of the counts from him. The issue before the board was whether McKirnan conceived and communicated the invention to Mead prior to the latter's filing date of September 30, 1971, on which he relies.

*The Board Opinion*

The board found that count 1 requires the lips to be spaced from each other, but not spaced from the slots as Mead argued. Hence, McKirnan's conception of a pair of slots and indicia for applying pressure was stated to be complete as of October 4, 1970, when he disclosed them to his employees for a retooling cost analysis. Noting McKirnan's conception prior to the December 1970 meeting, the discussion of modifications at the meeting, McKirnan's charge of communication of the invention to Mead, Dow's knowledge of the invention immediately after the meeting, and the failure of Mead to rebut McKirnan's charge, the board concluded that McKirnan had communicated the invention to Mead at that time. Finally, the board concluded that counts 2, 3, 5, and 6 are unpatentable over count 1 and therefore properly McKirnan's. On these bases, the board held that McKirnan had sustained his burden of proof of derivation by a preponderance of the evidence, and awarded him priority.

OPINION

Before this court, appellant argues that proper interpretation of the counts demands that all counts require "segmented lips" (i. e., substantially less than semicircular). He contends, apparently for the first time, that Fig. 5 of McKirnan's application, the count language "release of engagement," and McKirnan's prosecution history support his position. He also initially asserts that McKirnan's cap with "continuous lips" (semicircular-spaced from each other, but not from the slots) will not successfully operate. Lastly, appellant urges that even if the counts are interpreted literally, the evidence shows that McKirnan disclaimed the invention and thus failed to show originality.

Where, as here, a question of derivation is raised, the party charging derivation has the burden of showing prior, complete conception of the claimed subject matter and sufficient communication of the subject matter to the party charged to enable one of ordinary skill in the art to construct and successfully operate the invention. *Hedgewick v. Akers,* 497 F.2d 905, 908, 182 USPQ 167, 169 (Cust. & Pat.App.1974); *Anderson v. Anderson,* 403 F.Supp. 834, 845, 188 USPQ 194, 204 (D.D.C.1975), *aff'd,* 178 U.S.App.D.C. 76, 543 F.2d 1389 (1976).

We agree with the board that counts 1–5 do not require the lips on the inner skirt to be spaced from the slots, necessitating what appellant calls "segmented lips." Absent ambiguity, interference counts are to be given their broadest reasonable interpretation. Moreover, where a party's own specification supports a contrary inference, his argument that the language of the count is to be interpreted other than in its most obvious sense is weakened. *Grasselli v. Dewing,* 534 F.2d 306, 309, 189 USPQ 637, 639 (Cust. & Pat.App.1976).

In the instant case, the language "spaced from and located opposite to each other" is unambiguous, and, given its broadest reasonable interpretation, encompasses a pair of continuous lips extending from slot to slot. We find no ambiguity, and appellant has indicated none, that warrants construction of the counts so as to require that the lips be spaced from the slots. Moreover, we are not convinced that "release of said lips from engagement" demands complete non-contact between the lips and the container collar. Because the lips *lock* the cap to the collar, the release required, in this context,

**508**

is not from *total contact,* but rather from locking contact, i. e., sufficient to permit removal of the cap. Appellant's remaining arguments were not raised before the PTO and hence are not properly presented here for the first time. *In re Fong,* 378 F.2d 977, 981, 54 CCPA 1482, 1486, 154 USPQ 25, 28–29 (1967).

■ Having found no error in the board's interpretation of the counts, we turn to appellant's final argument. We do not agree that the testimony concerning the December 1970 meeting is at all confusing or indicates disclaimer by McKirnan. On the contrary, he at all times insisted on his inventorship, conceding that only modifications of his cap to conform to Dow's specifications were contributions from Knight employees. Likewise, the only evidence alluding to disclaimer during licensing negotiations in 1971 (relating to Bennett's application for patent No. 3,870,187 and Mead's application, both of October 16, 1970) is found in documents originating with Dow's patent counsel. Finally, appellant's charge of late filing "long after the fact" is insufficient on its face to establish abandonment or suppression. *See Young v. Dworkin,* 489 F.2d 1277, 180 USPQ 388 (Cust. & Pat.App. 1974).

As to dependent counts 2, 3, 5, and 6, we agree with the board's finding that they are obvious variations of the invention of count 1 and therefore rightly belong to McKirnan.

The decision of the board is *affirmed.*

AFFIRMED.