Arthur W. CHESTER, Albert B. Schwartz and William A. Stover, Appellants,

v.

Stephen J. MILLER and Keith C. Bishop, Appellees.

No. 90–1039.

United States Court of Appeals, Federal Circuit.

June 29, 1990.

Marina V. Schneller, Mobil Oil Corp., Fairfax, Va., argued, for appellants. With her on the brief, was Alexander J. McKillop.

Thomas G. De Jonghe, Chevron Corp., San Francisco, Cal., argued, for appellees.

Before MICHEL, Circuit Judge, BALDWIN, Senior Circuit Judge, and WILL, Senior District Judge.[*]

MICHEL, Circuit Judge.

Arthur W. Chester, Albert B. Schwartz, and William A. Stover (collectively Chester), applicants in U.S. Patent Application Serial No. 514,122 ('122), appeal the United States Patent and Trademark Office's (PTO's) Board of Patent Appeals and Interference's (Board's) rejection of their claims 1–30, all their application claims corresponding to the interference count, and the Board's decision that Stephen J. Miller and Keith C. Bishop (collectively Miller) are entitled to all their patent claims correspond-

---

[*] The Honorable Hubert L. Will, Senior District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

ing to the count, claims 1–20 of U.S. Patent No. 4,340,465 ('465). *Miller v. Chester,* Patent Interference No. 101,717 (Bd. Pat. App. & Int. Aug. 9, 1989). Because Chester has failed to establish that the Board clearly erred in its findings of anticipation and because we conclude that the Board properly denied consideration of Chester's motion for reconsideration as untimely, we affirm.

## BACKGROUND

This single count interference involves Miller's '465 patent, which issued July 20, 1982, and Chester's '122 application, filed July 15, 1983. Chester's application was filed as a continuation-in-part (CIP) application of two copending (commonly assigned) applications, and the lineage of those applications is noted in Figure 1, below.

Figure 1
Lineage of Patents

The subject matter of this interference relates to a process for catalytically cracking a feedstock[1] to yield products such as gasoline by contacting the feedstock with a catalyst that has two components: (1) a large pore crystalline aluminosilicate zeol-ite and (2) a *shape selective* crystalline aluminosilicate zeolite. "Shape selective" is used to mean that the second zeolite component has smaller pores than the first component; the second zeolite's smaller pores admit small hydrocarbon molecules

---

1. A feedstock consists of gaseous or liquid petroleum-derived hydrocarbons from which gasoline, fuel oil, and petrochemicals are produced.

*Condensed Chemical Dictionary* 451 (G. Hawley 10th ed. 1981).

but exclude certain larger hydrocarbon molecules.

The interference involved numerous preliminary motions by both parties. In particular, the Examiner-in-Chief (EIC) granted one of Miller's motions for judgment on the ground that Chester's claims 1–16, 29, and 30 are unpatentable under 35 U.S.C. § 102(b) (1988) over U.S. Patent No. 4,309,-280 ('280). The '280 patent was part of Chester's '122 CIP application's lineage (see Figure 1) and Chester had relied on the benefit of the earlier filing date of the '280 patent under 35 U.S.C. § 120 (1988). Acting pursuant to 37 C.F.R. § 641 (1989), the EIC also rejected Chester's claims 17–28 (Chester's remaining claims corresponding to the count) as unpatentable under 35 U.S.C. §§ 102 or 103 (1988) over U.S. Patent No. 3,758,403 ('403), not shown in Figure 1.

The EIC further granted Miller's alternative motion for judgment against Chester on all of his application claims on the ground that Chester was estopped to contend that the claims were patentable to Chester because Chester had disclaimed subject matter during the prosecution of the parent applications. Based on these decisions and pursuant to 37 C.F.R. § 1.640(d)(1) (1989), Chester was ordered to show cause why judgment should not be entered against him.

In response, Chester filed a paper arguing that judgment should not be entered against him (Show Cause Paper). But he did not request a final hearing or seek a testimony period. Chester's Show Cause Paper did address the motions granted and also requested reconsideration of the EIC's denial of one of Chester's motions for judgment on the ground that Miller's claims were unpatentable to Miller.

The Board found that all of Chester's claims corresponding to the count were unpatentable to Chester as being anticipated in accordance with the EIC's rejections. The Board also decided that the request for reconsideration incorporated into Chester's Show Cause Paper was an untimely motion

under 37 C.F.R. §§ 1.635, 1.637(b), and 1.645(b) (1989), and therefore would not be considered. Thus, the Board awarded judgment against Chester as to the subject matter of the interference count ruling Chester was not entitled to application claims 1–30 and ruling Miller was entitled to his patent claims 1–20.

Chester timely appealed the Board's decision to this court; we have jurisdiction over the appeal under 28 U.S.C. § 1295(a)(4)(A) (1988).

## OPINION

### I. *Chester's Claims 1–16, 29, and 30*

■ Anticipation is a question of fact we review under the clearly erroneous standard. *In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986). The EIC decided that the '280 patent, a parent of Chester's '122 CIP application, was section 102(b) prior art with respect to the CIP claims 1–16, 29, and 30. The EIC so decided because he found the '280 patent was a "printed publication" in existence more than one year before the '122 application's filing date. He also concluded that the '280 patent did not support the subject matter claimed in the '122 application. *See* 35 U.S.C. §§ 102(b) & 120 (1988); *In re Gosteli,* 872 F.2d 1008, 1010–11, 10 USPQ2d 1614, 1616 (Fed.Cir.1989). The EIC thus rejected claims 1–16, 29, and 30 as unpatentable under section 102(b) over the '280 reference. As noted, pursuant to 37 C.F.R. § 1.640(d)(1) (1989), the EIC issued an order to show cause why judgment should not be entered against Chester. We hold that Chester failed to overcome the prima facie case of anticipation, and thus the Board properly found Chester's claims 1–16, 29, and 30 unpatentable to Chester.

Although in some circumstances we could agree with Chester's implicit argument that a prima facie case of anticipation could not be established if an EIC concluded both that the subject matter claimed in a CIP application is not *enabled* by a parent application [2] and that the claims are antici-

---

**2.** To be prior art under section 102(b), the reference must put the anticipating subject matter at

issue into the possession of the public through an enabling disclosure. *See In re Donohue,* 766

pated by the parent which has issued as a patent, we cannot agree that this is always so. For example, a CIP's claim for a genus might not be enabled by a parent's disclosure, but that parent may enable a species that anticipates the CIP's claim for a genus. *Cf. In re Lukach*, 58 CCPA 1233, 442 F.2d 967, 969–70, 169 USPQ 795, 796–97 (1971). Nonetheless, we need not decide whether those are the circumstances here. In the instant case, the EIC simply found that the '280 reference (parent) did not support the '122 application claims because as to them it failed to meet the written description requirement.[3]

Chester further intimates that it is legally anomalous for the EIC first to assert that the '280 patent fails to provide sufficient written description to support his CIP claims and then find that the '280 patent anticipates those very claims. One of our predecessor courts, the Court of Customs and Patent Appeals (CCPA), however, made clear that differences exist between the requirements for claim-anticipating disclosures and for claim-supporting disclosures. *In re Lukach*, 442 F.2d at 969–70, 169 USPQ at 796–97. The CCPA noted in *Lukach* that although a patent might contain a disclosure satisfying the written description requirement with respect to the claims in that patent, it could still be section 102(b) prior art as to broader claims of a subsequent application although not containing a disclosure satisfying the section 112 description requirement with respect to the anticipated broader claims. *See id.* at 969–70, 169 USPQ at 797. This apparent anomaly is most likely to occur when the prior art reference discloses a species of a genus sought to be claimed. *See, e.g., id.* That is exactly what happened in the instant case, and accordingly we see no im-

permissible anomaly or logical inconsistency in the EIC's rejection.

We conclude that a prima facie case of anticipation was established justifying the EIC's decision to issue a show cause order. Thus, the burden was properly placed on Chester. *Cf. In re King*, 801 F.2d at 1327, 231 USPQ at 138. Chester failed to sustain his burden, however. No argument was offered that the application claims do not read on the '280 patent claims. Nor did Chester assert that the '280 patent is not prior art by attempting to show that the '280 specification met the written description requirement with respect to the '122 application claims. Before us, Chester merely attacked the holding of *Lukach* and presented the straw man that the Board found insufficient enablement. Accordingly, we are unpersuaded that the Board's finding of anticipation of claims 1–16, 29, and 30 was clearly erroneous.

## II. *Chester's Claims 17–28*

A claim is anticipated under section 102 if a prior art reference discloses every element of the claim. *King*, 801 F.2d at 1326, 231 USPQ at 138. The EIC rejected Chester's claims 17–28 under section 102 over the '403 patent.[4] Chester responded that the EIC had not specified that the '403 reference provided written description or enablement of the subject matter of the rejected claims.

### A.

Chester thus appears to make a procedural argument citing 35 U.S.C. § 132 (1988) which he noted requires rejections to include a statement of the "reasons."[5] We are unpersuaded that section 132 supports the proposition suggested by Chester—that

---

F.2d 531, 533, 226 USPQ 619, 621 (Fed.Cir.1985); *In re LeGrice*, 49 CCPA 1124, 301 F.2d 929, 936, 133 USPQ 365, 371 (1962).

3. The record reveals no mention of lack of enablement as the ground for denying Chester's CIP claims the benefit of the '280 patent's filing date.

4. The Board also rejected these claims under section 103 over the '403 reference. Because of

our decision, *infra*, concerning the section 102 rejection, we need not consider the section 103 rejection.

5. Section 132 states: "Whenever, on examination, any claim for a patent is rejected, ... the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, ... together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application."

the PTO is required to state specifically that a prior art reference describes and enables claims rejected as anticipated. That section does not mandate that in order to establish prima facie anticipation, the PTO must explicitly preempt every possible response to a section 102 rejection. Section 132 merely ensures that an applicant "at least be informed of the broad statutory basis for [the rejection of] his claims, so that he may determine what the issues are on which he can or should produce evidence." *In re Hughes*, 52 CCPA 1355, 345 F.2d 184, 185, 145 USPQ 467, 468 (1965). Section 132 is violated when a rejection is so uninformative that it prevents the applicant from recognizing and seeking to counter the grounds for rejection. *See, e.g., In re Wilke*, 50 CCPA 964, 314 F.2d 558, 562, 136 USPQ 435, 439 (1963). In the instant case, the reasons supporting the prima facie case of anticipation did put Chester on notice. The EIC specified exactly which claims read on exactly what prior art. The burden thus properly was shifted to Chester to rebut the prima facie case. *Cf. King*, 801 F.2d at 1327, 231 USPQ at 138.

### B.

■ Chester did not produce any evidence that the '403 reference did not satisfy the written description and enablement requirements with respect to the anticipating subject matter so as to preclude the Board from finding that anticipation had been established by the preponderance of the evidence. *Compare In re Wiggins*, 488 F.2d 538, 543, 179 USPQ 421, 424–25 (CCPA 1973). Furthermore, Chester's arguments that the written description requirement was not satisfied, could be to no avail in any event, as we noted *supra*, citing *In re Lukach*, 58 CCPA 1233, 442 F.2d 967, 969–70, 169 USPQ 795, 796–97 (1971). All Chester did, substantively, to rebut the prima facie case was point to the application *claim language* that he believes is not enabled by the '403 reference, but he offered no explanation of how

the '403 reference fails to provide enablement of the *claimed subject matter*.[6]

Chester specified two limitations of claim 17 as not disclosed by the '403 reference: (1) that the shape selective zeolite have "a silica to alumina mole ratio of at least 12," and (2) that the amount of zeolite framework aluminum be "sufficient to effect octane number increase and total yield improvement." Both of these limitations are disclosed in the '403 reference, however.

The first is disclosed by the '403 reference's description of ZSM–5 type zeolites (shape selective zeolites) having a "silica/alumina mole ratio ... [with] ranges up to about 60." Claim 17's silica/alumina ratio "of at least 12" clearly overlaps the range disclosed by the '403 reference.

The second limitation that Chester asserts was not disclosed is disclosed by the '403 patent's description of the invention as producing "improved results ... with respect to both *octane number and overall yield* if [one uses] ... a catalyst composition comprising a large pore size crystalline aluminosilicate in *admixture* with a novel shape selective crystalline aluminosilicate generally identified as the ZSM–5 type." (emphasis added). Moreover, the '403 reference discloses a type of shape selective zeolite with various silica/alumina ratios that necessarily affect the amount of framework aluminum present in the zeolite. Accordingly, the EIC considered this disclosure to anticipate an admixture with a ZSM–5 type zeolite with framework aluminum that would increase the octane number and total yield.

Because no convincing argument was presented to the Board that the limitations highlighted by Chester were not disclosed by the '403 reference, we conclude that the Board's finding that claim 17 was anticipated was not clearly erroneous. Because Chester failed to make any arguments as to how the Board clearly erred in rejecting claims 18–28 as anticipated, we affirm the

---

**6.** The rather extensive explanation Chester provides in his appellate brief was not presented to the Board. This court will not consider arguments that were not timely raised before the Board. *Mead v. McKirnan*, 585 F.2d 504, 508, 199 USPQ 513, 516 (CCPA 1978).

Board's decision with respect to those claims as well.[7]

### III. *Miller's Claims*

After an EIC has ruled on a preliminary motion brought under 37 C.F.R. § 1.633 (1989), further consideration of the matter raised in the motion may be pursued in different ways, depending on the procedural circumstances. If a show cause order has issued, an interference party may request a final hearing that may address *all* issues specified in 37 C.F.R. § 1.655(b) that were previously decided by the EIC. *See id.* § 1.640(e); *Interference Practice: Response to Order to Show Cause Under 37 CFR 1.640*, 1086 Official Gazette 282, 282 (Jan. 5, 1988). Such issues include section 1.633 preliminary motions whether denied or granted. *See* 37 C.F.R. § 1.655(b). A party can also request reconsideration of any section 1.633 motion that did not result in a show cause order. 37 C.F.R. § 1.640(c). However, such a request must be made within fourteen days from the date of the decision. *Id.*

 Chester had filed a section 1.633 motion for judgment on the ground that Miller's claims are not patentable to Miller. That motion was denied by the EIC and no order to show cause was issued concerning that motion. Nor did Chester request a final hearing on any matter. Subsequently, Chester sought reconsideration in his Show Cause Paper. That Show Cause Paper, however, was not filed until after the fourteen day deadline. Accordingly, the Board denied, as untimely, what it properly took to be a motion for reconsideration incorporated into the Show Cause Paper. We can discern nothing in the rules that mandates that the EIC or the Board reconsider all matters raised by prior motions that have not resulted in a show cause order merely because a party has noted them in a show cause paper. Nor has Chester provided any authority for such a proposition. We do agree with Chester

that the interference rules permit further consideration of the patentability of Miller's claims after denial of Chester's motion for judgment, but only if proper procedures are followed. Here, Chester failed to initiate the proper procedures. Accordingly, we also hold the Board's refusal to consider his untimely motion for reconsideration was correct.

The decision of the Board is

AFFIRMED.

---

7. Because we uphold the Board's rejection of all of Chester's claims corresponding to the count, we need not review the Board's decision that Chester is estopped from asserting his claims were patentable to him. Nor do we rest our decision concerning claims 17–28 on the distinction drawn in *Lukach*.