956 F.2d 1171
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Theodore H. STANLEY.
 No. 91-1400.
 United States Court of Appeals, Federal Circuit.
 Feb. 4, 1992.
 
 Before NIES, Chief Judge, and RICH and RADER, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 Theodore H. Stanley appeals from the April 30, 1991 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 90-0218, affirming the rejection of claims 1, 7, 14, 24-39, 49, 57-58, 66-67, 70, 72, and 75-76 in application Ser. No. 07/060,080, titled "Methods and Compositions for Noninvasive Dose-to-Effect Administration of Potent Drugs Having Central Nervous System Activities," as unpatentable under 35 USC 103. We affirm.
 
 DISCUSSION
 
 2
 Stanley's generic claims are drawn to "potent CNS-acting, lipophilic drug" compositions in lollipop form, and a method for administering the drug in lollipop form in a "dose-to-effect" manner, thereby controlling the rate of dissolution of the drug "to obtain the predetermined systemic sedative and anxiolytic effects in the patient while accounting for the patient's individual susceptibility to the potent CNS-acting drug."[1] "Potent CNS-acting drugs" are defined in the specification to mean those drugs having an effect on the central nervous system of the patient which is equal to or greater than the drug morphine.
 
 
 3
 Among the references cited by the examiner in support of the § 103 rejection, the Board found that the Dyer article discloses that various medicaments (including aspirin and local anesthetics, less potent than morphine) have been incorporated into hard candy bases, as well as advantages of using such hard candy-based pharmaceuticals in the form of lollipops. "Particularly relevant," the Board found, is the Russell patent's disclosure of administration of drugs (including morphine) in a dose-to-effect manner, albeit in the form of a gelatinous wafer, not a lollipop:
 
 
 4
 [A]bsorption is allowed to continue until the desired effect resulting from administration from the drug is obtained.
 
 
 5
 ....
 
 
 6
 Furthermore, the vehicle ... may be easily removed when sufficient of the drug has been absorbed, and therefore the vehicle is particularly suitable for administering drugs which produce easily identifiable signs of sufficient absorption thereof....
 
 
 7
 ....
 
 
 8
 The vehicle of this invention is particularly suitable for the administration of drugs which vary in potency according to the condition of the patient, as the vehicle may be removed when sufficient of the drug has been absorbed.
 
 
 9
 Also "particularly relevant," the Board found, is the De Boer article's disclosure of the relationship between lipophilicity of a drug and its suitability for buccal (via tissues of the mouth and cheeks) administration. Based upon the combined teachings of these references, the Board concluded that the claimed subject matter would have been obvious to one of ordinary skill, affirming the decision of the examiner.
 
 
 10
 Stanley's principal argument on appeal is that none of the cited references discloses the claimed method step of controlling the dissolution rate of the potent CNS-acting drug over time, in the so-called "dose-to-effect" manner. In contrast to the claimed method, Stanley argues, Russell discloses only the insertion of his gelled wafer, containing a specified dosage of a desired drug, in the parabuccal cavity until sufficient of the wafer is dissolved, which terminates the treatment; in other words, a "passive" administration of a constant amount of medicament while the wafer is affixed by suction to a discrete area of the mouth. The claimed method, Stanley argues, involves the continuing maintenance and/or modification of drug delivery levels, in response to the patient's subjective needs and susceptibility to the drug. For example, the patient can speed up the rate of drug absorption by more aggressive sucking of the claimed lollipop, or a healthcare practitioner can reposition the lollipop by using its holder means to ensure the proper rate of dissolution.
 
 
 11
 We are not persuaded that one of ordinary skill in this art, presumably a trained medical professional, would not find it obvious in view of the prior art to extract a lollipop from a patient's mouth and reinsert it, perhaps at a varying rate or in a different position, as needed in response to a patient's reactions. Though Russell speaks of removing his wafer once sufficient drug absorption thereof has occurred, nothing in Russell suggests that the wafer could not be reapplied as needed. And as noted by the Solicitor during oral argument, the De Boer article also addresses this controlled dissolution aspect of the claimed invention. In reviewing absorption of a variety of drugs, including narcotic analgesic drugs, by buccal routes of administration such as tablets, solutions and pastes, De Boer discloses that
 
 
 12
 [a]bsorption is highly dependent on the residence time of the drug in the sublingual and buccal area and this may vary considerably.... Therefore the patient must learn to adapt to these routes of administration....
 
 
 13
 (Emphasis added).
 
 
 14
 In sum, we concur with the Solicitor that one of ordinary skill in this art would have found the claimed subject matter obvious under 35 USC 103, particularly in view of Dyer's teaching of drug administration via lollipops, in combination with the Russell and De Boer teachings of "dose-to-effect" administration via buccal absorption of drugs such as morphine.
 
 
 15
 Stanley urges that, in the event we concur in the PTO's determination of prima facie obviousness, we consider certain affidavit evidence of "unexpected results." These affidavits, submitted to the PTO during prosecution of the parent application, were apparently never separately submitted nor discussed with the examiner during prosecution of the instant application, and are not mentioned in the Board's opinion. This court will not consider arguments raised for the first time on appeal, which were not properly raised before the Board. Chester v. Miller, 906 F.2d 1574, 1578 n. 6, 15 USPQ2d 1333, 1337 n. 6 (Fed.Cir.1990).
 
 
 
 [1]
 Representative method claim 1 provides (emphasis ours):
 
 
 [1]
 A method for administering a drug to a patient prior to a surgical or medical procedure, the method comprising the steps of:
 obtaining a soluble matrix material in the form of a lollipop into which a potent CNS-acting, lipophilic drug capable of inducing predetermined sedative and anxiolytic effects in the patient has been dispersed, said soluble matrix material being capable of releasing the potent CNS-acting drug for absorption through mucosal tissue of the mouth, pharynx, and esophagus;
 providing the drug-containing lollipop to the patient to who the potent CNS-acting drug is to be administered in order to induce systemically predetermined sedative and anxiolytic effects in the patient;
 administering to the patient prior to the surgical or medical procedure the drug-containing lollipop in a manner such that the lollipop is dissolved in the patient's mouth so that the potent CNS-acting, lipophilic drug is absorbed through the mucosal tissues of the mouth, pharynx, and esophagus, thereby entering the patient's bloodstream, said administering step being accomplished in a dose-to-effect manner; and
 controlling the rate of dissolution of the drug-containing lollipop in a dose-to-effect manner in order to obtain the predetermined systemic sedative and anxiolytic effects in the patient while accounting for the patient's individual susceptibility to the potent CNS-acting drug.