**EXXON CORPORATION, Plaintiff,**

**v.**

**DOW CHEMICAL COMPANY and DuPont Dow Elastomers L.L.C., Defendants.**

No. 5:97CV0034.

United States District Court,
E.D. Texas,
Texarkana Division.

Sept. 4, 1998.

Malcolm E. Wheeler, Wheeler, Trigg & Kennedy, P.C., Denver, CO, Jesse J. Jenner, Fish & Neave, New York City, Hubert Oxford, III, Benckenstein & Oxford, L.L.P., Beaumont, TX, Damon Young, Young, Kesterson & Pickett, Texarkana, TX, for plaintiff Exxon Corporation.

J. Thad Heartfield, Heartfield & McGinnis, L.L.P., Beaumont, TX, Harry J. Roper, Raymond N. Nimrod, Roper & Quigg, Chicago, IL, Donald G. Kempf, Jr., Kirkland & Ellis, New York City, Charles J. Kalil, The Dow Chemical Company, Midlad, MI, James N. Haltom, Patton, Haltom, Roberts, McWilliams & Greer, Texarkana, TX, for defendant The Dow Chemical Company.

Hamilton Loeb, Paul, Hastings, Janofsky & Walker LLP, Washington, DC, Robert A. Black, Mehaffy & Weber, Beaumont, TX, for defendant DuPont Dow Elastomers, L.L.C.

## MEMORANDUM OPINION AND ORDER

JOE J. FISHER, District Judge.

This patent infringement action was tried to the Court and trial commenced August 10, 1998 and concluded August 19, 1998, with argument of the attorneys. The Court has considered the pleadings, the extensive evidence adduced at the trial, including numerous trial exhibits submitted by the parties and the testimony of some fourteen experts in the fields of organometallic chemistry and patent application procedures; the stipulations of record, and the comprehensive trial briefs submitted by the parties. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

This action arose on the complaint of Exxon Corporation ("Exxon") alleging that defendants The Dow Chemical Company ("Dow") and DuPont Dow Elastomers LLC ("DuPont Dow") infringe U.S. Patent No. 5,599,761 ("the '761 patent"). The '761 patent is directed to "Ionic Metallocene Catalyst Compositions" that are used in the manufacture of polymers, including polyethylene.[1]

1. The '761 patent was issued in February 1997 after a lengthy process before the Patent Office

Specifically, Exxon contends that Dow and DuPont Dow infringe the '761 Patent by using and selling polymers made by the use of Exxon's patented catalyst methods. Exxon is seeking damages under 35 U.S.C. § 284 to compensate for the infringement, as well as injunctive relief under 35 U.S.C. § 283 to prevent Dow and DuPont Dow from continuing to violate Exxon's patent rights.

Defendants deny that their polymerization catalyst system, known as the Dow IN-SITE® catalyst system, infringes the claims of the '761 patent. Defendants also assert that the patent is invalid and unenforceable.

The Court has jurisdiction over the parties and subject matter. 28 U.S.C. §§ 1338, 2201, 2202; 35 U.S.C. § 281. Each party is registered to do business in the state of Texas and conducts substantial business operations in this judicial district.

Trial was bifurcated, as stipulated by the parties, with the first phase limited to issues of patent scope, infringement, validity, and enforceability.

The '761 Patent is the patent at issue in this case. It is a patent issued to Exxon based on the work of Exxon scientist Dr. Howard Turner. The '761 Patent involves using a particular kind of anion to stabilize a cation metallocene complex which acts as a catalyst to polymerize olefins.

## I.

The following facts are established by the record and testimony before the Court. Polymerization catalyst systems are used in the manufacture of plastics, synthetic rubber, and similar substances. Polymerization catalysts are compounds that promote or facilitate a chemical reaction by which certain chemical substances (called "monomers") are transformed into polymers, or the base material for plastics and related goods.

The particular anion described by the '761 Patent, which the Court will refer to as a Turner Anion, has certain characterists. To qualify as a Turner Anion, the anion must have the general formula $[BAr_1Ar_2X_3X_4]$ where B is boron in a valance state of 3; $Ar_1$ and $Ar_2$ are the same or different substituted-aromatic hydrocarbon radicals which radicals may be linked to each other through a stable bridging group; and $X_3$ and $X_4$ are, independently, selected from the group consisting of hydride radicals, halide radicals, hydrocarbyl radicals, substituted-hydrocarbyl radicals, and organometalloid radicals.

Exxon contends that Dow and DuPont Dow infringe the '761 Patent by their use of a Turner Anion to stabilize a cation metallocene complex in their INSITE system. Specifically, Exxon contends that Dow and DuPont Dow in their reaction use the borate anion $[B(C_6F_5)_3CH_3]$, a Turner Anion.

If Dow and DuPont Dow use this, or any other, Turner Anion in their reaction, then they have infringed. The Court, therefore, must find as an issue of fact whether Exxon has met its burden of proving by a preponderance of the evidence that the Turner Anion $[B(C_6F_5)_3CH_3]$, or any other Turner Anion, is created in the Dow and DuPont Dow reaction.

■ Exxon put on much evidence that a Turner Anion is created. Dow and DuPont Dow countered this evidence, however. They introduced much evidence raising doubt about Exxon's testing methods. Specifically, Dow and DuPont Dow raised the issue that the Turner Anion found by Exxon was not really present in the reaction, but rather, was an artifact of Exxon's testing methods. The Court finds that Exxon has failed to meet its burden of proving by a preponderance of the evidence that any Turner Anion is actually present in Dow and DuPont Dow's reaction, and not an artifact of testing. Because Exxon has not proven a Turner Anion is present, Exxon has failed to meet its burden of proving infringement. The Court finds that under Exxon's construction of the patent claims, it has failed to prove that Dow and DuPont Dow infringe.

involving several predecessor or parent patent applications. The parties contest whether the application is entitled to the claimed priority date of January 30, 1987, when the first application in the chain was filed. *See Chester v. Miller,* 906 F.2d 1574 (Fed.Cir.1990). Based on the Court's conclusions that Exxon has not met its burden of proof on infringement, the Court need not make findings with respect to this issue.

## II.

Ionic polymerization catalyst systems involve the use of a negatively charged compound (called an "anion") and a positively charged compound (called a "cation"). All claims of the '761 patent are limited to "a method of stabilizing an active ionic polymerization catalyst species" using an anion that has the characteristics described in the claims. It is undisputed that, to infringe any claim of the patent, an accused process must contain an anion of the type claimed, that the anion must be stabilizing an active catalyst species, and that the catalyst species must be ionic.

■ Exxon has the burden of proof on the issue of infringement. *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1196 (Fed.Cir.1994). As part of that burden, Exxon must prove by a preponderance of the evidence that defendants' accused processes meet each and every limitation and requirement of the '761 patent claims in order to prove literal infringement. *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 796 (Fed.Cir.1990). Exxon has failed to meet that burden.

The Court finds that Exxon has failed to prove the presence of any borate anions in the accused processes. Exxon initially contended that alleged borate zwitterions in the defendants' commercial catalyst processes infringed the '761 patent, but Exxon abandoned this claim. Exxon also alleged the presence of 42 different borate anions in the defendants' commercial catalyst processes but abandoned these claims as well as to each such anion. Shortly before trial, Exxon advanced a new theory—the assertion that defendants' accused processes cause the formation of one specific borate anion, the "methyl-tris borate anion"[2]—an anion not on Exxon's earlier list of 42 anions. Exxon claims this methyl-tris borate anion forms through a process by which the three starting compounds used by defendants are combined outside the polymerization reactor, forming a "titanium borate zwitterion" outside the reactor, which then "breaks up" upon exposure to ethylene inside the defen-

dants' reactors into a cation and anion. It is at this point, Exxon asserted at trial, that the infringing anion arises in the defendants' system.

It is uncontroverted (i) that each of the three Dow starting ingredients is a non-ionic, neutral compound and therefore contains no anions; (ii) that no anion is formed by the first combination of the starting ingredients identified as "FAB" and "MMAO"; and (iii) that no anion is formed by the combination of the FAB–MMAO mixture with Dow's mono-Cp metallocene compound, known as CGC–7. Exxon's burden was to prove its theory that, when the mixture of starting ingredients reacts with ethylene under polymerization conditions inside the reactor, a borate anion forms.

The Court finds that this theory was not supported by the evidence. This includes the testimony of both Exxon's and defendants' experts regarding the literature in the field of metallocene chemistry and the experimental testing done on various compounds intended to simulate defendants' processes. According to Exxon's initial theory, the literature predicted that each of 42 different borate anions would be created in the defendants' system, but Exxon's own testing conclusively demonstrated that none of the 42 were actually present. Moreover, this literature did not predict the presence of the methyl-tris borate anion on which Exxon ultimately based its case at trial.

Exxon's testing was not convincing. Exxon presented the results of tests performed by nuclear magnetic resonance (NMR) spectroscopy, by mass spectrometry, and by certain other methods. Some of the tests appeared to detect a methyl-tris borate anion— and only that single anion—in the samples prepared by or under the direction of Exxon's principal expert. But the evidence clearly established that, in preparing the samples for testing, Exxon's experts and technicians added two additional ingredients (a solvent known as THF and a bromide compound)—*neither of which is used in the defendants' polymerization system*—to the sample solution that was to be tested. Defendants showed that these two additional

**2.** The chemical formula for this alleged anion is $[B(C_6F_5)_3Me]$.

ingredients actually create the methyl-tris borate anion through a side reaction unrelated to the polymerization process. It is recognized in the chemical literature that the addition of such ingredients can cause the creation of anions. Defendants showed that, when the additional ingredients used by Exxon's testing (THF and bromide) were added to the Dow process after 10 minutes of polymerization, the result was the immediate creation of methyl-tris borate anions as detected by NMR testing. This further demonstrated that the anions alleged by Exxon were artifacts of the testing, not the IN-SITE® process. Accordingly, it was the addition of these extra ingredients, not the defendants' process, that accounts for the identification of the methyl-tris borate anion in the tests Exxon presented.

Defendants also offered persuasive evidence that any borate anions detected in the Exxon mass spectrometry results were further flawed as a product of the equipment used in the testing process, and not the defendants' catalyst system. The literature recognizes, and Exxon's experts conceded, that mass spectrometry tests can themselves produce anions. Defendants submitted side-by-side comparisons in which a mass spec test reported the creation of methyl-tris borate anions while a NMR test of the identical compound showed no such anions.

The defendants' testing evidence was persuasive. This evidence included tests that closely approximated the actual conditions of polymerization in the defendants' reactors, which tests showed that no methyl-tris or other borate anions were detected in the INSITE® process during polymerization conditions. Defendants also presented conductivity tests conducted by a recognized expert in the field, which showed that the Dow process was non-ionic during polymerization, while the '761 process was ionic in nature. The Court finds, after weighing the testimony, including the credibility of the witnesses, and carefully considering the exhibits and expert reports submitted, that the test results on which Exxon relied were not sufficiently reliable to overcome the strong evidence presented by defendants that their process does not contain or create borate anions.

Exxon presented no evidence at trial to support the presence of any aluminate anion in the defendants' INSITE® process, although some of Exxon's witnesses expressed unsupported suspicion that such anions might be formed. While claims 1 through 7 of the '761 patent require a borate anion, all of the claims require a water-stable anion.[3] Defendants presented proof that the aluminate anions that Exxon thought might be in the defendants' process (had the presence of such an anion been shown) would not be water stable. The Court finds that no such anions are produced in the defendants' system and that, in any event, the aluminate anions Exxon claimed might be there would not be water stable.

### III.

Defendants also assert three additional, independent grounds of noninfringement, each of which goes to the scope of the claims of the '761 patent.

First, defendants assert that they cannot infringe because the INSITE® system is based on a mono-Cp catalyst species, which is not covered by the patent. Second, defendants assert that they cannot infringe because, during the course of prosecuting the '761 patent in the Patent Office, Exxon expressly disclaimed coverage of catalyst systems comprised of metallocenes, Lewis acids, and aluminum alkyls, which are the components of defendants' catalyst system. Third, defendants assert that the activation process in their catalyst system uses a non-ionic Lewis acid, which results in a reversible reaction, and therefore lies beyond the scope of the '761 patent, which specifies as a main objective the creation of an irreversible activation process through an ionic Bronsted acid "which will irreversibly react" with the metallocene compound.

---

3. Claims 8–12 expressly require a water-stable anion. Based on the specification and the inventor's testimony that "the definition of a non-coordinating anion in the '761 patent and all of the patents that precede it deal with a water-stable anion," the Court determines that claims 1 through 7 also require a water-stable anion.

The parties dispute the proper interpretation of the phrase "polymerization catalyst species," which is contained in all claims of the '761 patent. Defendants contend that this phrase refers to metallocene catalyst compositions, the first component of which is a bis-cyclopentadienyl ("bis-Cp") derivative of a Group IV–B metal compound. Exxon asserts that the claims are not so limited, and that the phrase "polymerization catalyst species" should be construed to extend also to mono-Cp metallocenes, such as those used by defendants.

Because the claim language itself contains no further explication of the "polymerization catalyst species" to which the claimed method applies, the Court looks to the specification of the patent for guidance. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed.Cir.1995). The Court finds that, when construed in light of the specification, the claims of the '761 patent are confined to polymerization catalyst species consisting of bis-Cp metallocenes.[4]

In light of the Court's finding of no infringement and the Court's determination that the claims of the '761 patent are confined to polymerization catalyst species, consisting of Bis–Cp metallocenes, the remaining independent grounds of noninfringement need not be addressed.

## IV.

Exxon asserts, alternatively, that defendants infringe under the doctrine of equivalents. Equivalency is to be determined on an element-by-element basis for every element of the patent claims. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997). To determine if each element of defendants' accused processes is equivalent to the claims of the '761 patent, this Court applies the traditional function, means, and result standard. *Id.* Accordingly, after weighing the evidence, the Court finds that the accused processes do not infringe the '761 patent under the doctrine of equivalents.

## V.

Accordingly, the Court finds that Exxon has failed to satisfy the burden of proving the issue of infringement as well as presence of a borate anion of any kind in defendants' INSITE system. Exxon also failed to show that defendants' processes use a water-stable anion. As a result, the Court finds that defendants' INSITE systems are not ionic and do not infringe claims 1 through 12 of the '761 patent.

For the foregoing reasons, the Court dismisses Plaintiff Exxon's complaint. Also, defendants' declaractory judgment counterclaim is dismissed without prejudice. In view of the Court's finding of noninfringement, the Court need not address Defendants' affirmative defenses of patent invalidity and unenforceability.

Costs to be adjudged against the parties incurring the same.

IT IS SO ORDERED.

---

**4.** The specification of the '761 patent contains repeated and detailed descriptions of the "polymerization catalyst species" referenced in the patent claims. All of these descriptions state that the species is comprised of a bis-Cp metallocene.