NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent. The panel majority’s ruling on patent term adjustment is in conflict with the Patent Act, for the PTO’s admittedly incomplete restriction requirement during patent examination contributed' to the delay in issuance of the patent.
The panel majority reasons that Wyeth[1] could have or should have filed a speculative response to the flawed restriction requirement, on the premise that Wyeth should have guessed as to which of the 21 groups the examiner would have chosen for each of the six claims that the examiner erroneously omitted from the requirement for restriction.[2] On the premise that Wyeth might have guessed correctly and that the examiner might have proceeded with the prosecution without correcting his error, my colleagues refuse to include the period of actual delay in the adjustment of the patent term.
Instead of the highly irregular action conjured by the panel majority — an action of uncertain propriety and unlikely responsiveness, an action that could well have backfired, see 37 C.F.R. 1.135(b) (an incomplete reply leads to abandonment of the application); MPEP § 711.02 — Wyeth telephoned the examiner. The examiner immediately recognized his error, withdrew the flawed Office action, and promptly issued a corrected Office action. The panel majority apparently believes that these events were unnecessary and that Wyeth was at fault in seeking a corrected official action, and thus must suffer denial of the statutory term adjustment for the additional delay.
Thus the panel majority refuses to count the period of delay consumed by the examiner’s error and its correction. However, such prosecution delay is within the statutory conditions for Patent Term Adjustment, 35 U.S.C. § 154. The delay occurred, and it cannot be reasonably disputed that the applicant and the examiner acted appropriately to cure the examiner’s error.
*477 Despite the PTO’s admission of its error, my colleagues propose that the applicant should have proceeded as if the incorrect restriction requirement were correct “because the initial restriction requirement placed the applicant on notice of ‘the broad statutory basis for [the rejection of] his claims,’ Chester, 906 F.2d at 1578, the restriction requirement satisfied the notice requirement of Section 132.” Maj. Op. at 476. Thus the panel majority holds that this admitted PTO-caused delay must be treated as if it did not occur, although it necessarily delayed prosecution, for the applicant could not reliably elect which claims to prosecute when some claims had been omitted by the examiner.
The issue is not whether the applicant could have guessed where among the 21 groups the examiner intended to put claims 75, 76, 103, 104, 105, and 106. Nor is the issue whether the error was harmless (the PTO does not argue that its error was harmless), for it is not disputed that the error delayed prosecution. The PTO does not argue that the prosecution could have proceeded in the absence of PTO correction of its failure to account for every claim. The issue is simply whether the delay that necessarily ensued is an “ ‘A’ Delay” subject to inclusion in the term adjustment.
The Wyeth patent application was completed and filed on December 8, 2003. The 14-month deadline for PTO issuance of the first official action was not met, and the incomplete initial restriction requirement was issued by the PTO on August 10, 2005, with response due on February 10, 2006. Wyeth phoned the examiner on February 6, 2006, pointing out the error. The examiner withdrew the flawed restriction requirement, and issued a corrected restriction requirement on February 23, 2006. The patent issued on April 10, 2012.
The PTO issued a Patent Term Adjustment of 1201. days. Pfizer seeks to increase the adjustment by 197 days, measured as the period from the examiner’s incomplete restriction requirement on August 10, 2005 to the issuance of the corrected restriction requirement on February 23, 2006. It is not disputed that the pendency period was lengthened by this amount.
The panel majority holds that this period of delay should be attributed to the applicant, not the PTO. This is indeed curious, for the applicant made no error. The panel majority holds that PTO error does not count if the applicant could have figured out what the examiner might have done if he had not erred. The panel majority appears to believe that this would have eliminated the delay consumed by the correction of the error. However, the prosecution was delayed by the PTO’s error.
Patent Term Adjustment was enacted 'into law in order to compensate for prosecution delays, for patent life is measured from the initial filing date, but patent rights do not arise until the patent is granted. The statute states:
35 U.S.C. § 154(b) Adjustment of patent term.—
(1) Patent term guarantees.—
‡ $
the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.
By statute, Patent Term Adjustment accumulates until the PTO issues a notification under Section 132. 35 U.S.C. § 154(b)(1)(A)®. Section 132 requires a complete Office action, see 37 C.F.R. § 1.104(b) (“The examiner’s action will be complete as to all matters----”); MPEP *478 § 707.07 (same). Office actions also include requirements for restriction, see 37 CFR § 1.142 (“If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant in the reply to that action to elect an invention to which the claims will be restricted”); MPEP § 707 (Office action may include restriction requirements); see also Responding to Office Actions, USPTO, http:// www.uspto.gov/patents-maintaining-patent/ responding-office-actions (“Office actions include a restriction requirement, a non-final Office action, and a final Office action.”).
Chester v. Miller, 906 F.2d 1574 (Fed. Cir.1990) does not hold otherwise. There, the examiner “specified exactly which claims read on exactly what prior art.” Id. at 1578. The patent applicant argued that the examiner “had not specified that the ... reference provided written description or enablement of the subject matter of the rejected claims.” Id. at 1577. The court held only that Section 132 does not require the PTO “to state specifically that a prior art reference describes and enables claims rejected as anticipated.” Id. at 1578. In Chester, the court concluded that the Office action was complete, not that a less-than-complete Office action would comply with Section 132.
In re Hughes, 52 CCPA 1355, 345 F.2d 184 (1965), upon which Chester relies, does not attempt to define the requirements of Section 132. There, although the examiner rejected claims under Section 102, the Board rejected the same claims under Section 103 without notifying the applicant that the statutory basis for the rejection had changed. Id. at 185. The CCPA observed that “[i]t seems basic to the concept of procedural due process that an applicant at least be informed of the broad statutory basis for rejecting his claim.” Id. Section 132, the -CCPA noted, was intended to ensure compliance with at least this bare minimum. Id.
Several MPEP sections provide details, all to the effect that Section 132 requires completeness of the restriction requirement as to all of the claims. See MPEP § 814 (duty to' account for all claims), § 815 (duty to make restriction requirement complete). Here the restriction was facially incomplete. The applicant is not required to guess, to fill in the blanks erroneously left by the PTO. The applicant’s guess cannot bind the PTO. That uncertainty is illustrated here, for the examiner, in the supplemental restriction, classified claim 106 in Group XI whereas the applicant, in its response, believed that claim 106 belonged in Group VI.
Rather than guess, the applicant is entitled to a complete Office action. See 37 C.F.R. § 1.104(b). Here, the PTO provided an incomplete action. The delay caused by such a scenario should not be charged against the patent applicant, nor should the applicant be prejudiced by the examiner’s error. The panel majority erroneously holds that term adjustment is not available because the applicant, not the PTO, spotted the PTO’s error. See Maj. Op. at 475-76 (distinguishing Janssen and Onco-lytics on such grounds). Whether the examiner’s actions “were outside the normal ‘give-and-take process’ of patent prosecution,” id., should not turn on who recognized the error.
Importantly, this is not a case where a patent applicant persuaded an examiner to withdraw a rejection or restriction on the merits. This case is unlike University of Massachusetts v. Kappos, 903 F.Supp.2d 77 (D.D.C.2012) (“UMass ”), where the district court stated the issue as “whether, as a matter of law, when an applicant successfully convinces an Examiner to change a ruling contained in an Office action, re *479 gardless of whether it is classified as a vacatur, that renders the first Office action ‘a nullity for purposes of calculating A delay under Section 154(b)(1)(A).’ ” Id. at 86 (emphasis in original). In UMass there was no allegation that the restriction requirement was incomplete; only that it “ran counter to the classification scheme devised by plaintiffs.” Id. at 81. During telephone conversations, the applicant convinced the examiner to change the original groupings. Id. UMass does not support the proposition that a facially incomplete Office action does not count 'for patent term adjustment.
The statutory purpose is clear: when patent issuance is delayed because of proceedings that are not the fault of the applicant, the patent term is extended to compensate for the delay. H.R. Rep. No. 106-287, at 49 (1999) (“Title III amends the provisions in the Patent Act that compensate patent applicants for certain reductions in patent term that are not the fault of the applicant.”). My colleagues’ statutory interpretation and application are contrary to the letter and purpose of the law. I respectfully dissent.

. The '786 patent is assigned to Wyeth Holdings Corporation, a wholly owned subsidiary of Pfizer, Inc. The patent owner is herein designated as “Wyeth.”

. In instructing as to restriction requirements, the Manual of Patent Examining Procedure states that "every claim should be accounted for.” MPEP § 814.