**PFIZER, INC. & Wyeth Holdings Corporation, Plaintiffs,**

v.

**Michelle K. LEE, Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office, Defendants.**

Case No. 1:12–cv–01131–GBL–TRJ.

United States District Court,
E.D. Virginia,
Alexandria Division.

Filed Nov. 6, 2014.

William Boyle Porter, Blankingship & Keith PC, Fairfax, VA, for Plaintiffs.

Stephen Obermeier, U.S. Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Plaintiffs Pfizer, Inc. and Wyeth Holdings Corporations' (collectively, "Pfizer") Motion for Summary Judgment (Doc. 28) and Defendant Michelle K. Lee on behalf of the USPTO's Motion for Summary Judgment (Doc. 32). This case involves the United States Patent and Trademark Offices' ("USPTO" or "PTO") decision of abandonment as to Patent Application No.

10/428,894 ("'894 Application") and the Patent Term Adjustment applied to U.S. Patent No. 8,153,768 (the "768 Patent"). Pfizer seeks a determination of no abandonment from the Court, and what it deems, a correction, of the patent term adjustment. The USPTO alleges that the Court lacks jurisdiction as to the issue of abandonment and claims the patent term adjustment applied to the '768 Patent need not be modified.

There are two issues before the Court. The first issue is whether the Court should grant Plaintiffs' Motion for Summary Judgment to reverse the USPTO's determination that the '768 patent was abandoned, where Pfizer argues that the PTO's decision of abandonment was not based on substantial evidence, and relied on several erroneous factual findings. The Court DENIES as MOOT Pfizer's Motion for Summary Judgment as to the abandonment issue because the USPTO, since the filing of these motions, reviewed its ruling and withdrew the agency's earlier finding of abandonment.

The second issue is whether the Court should grant Pfizer's Motion for Summary Judgment and modify the Patent Term Adjustment ("PTA") granted to Pfizer from 404 to 601 days, where Pfizer argues the first Office Action—a Restriction Requirement, was defective and thus the time for "A–Delay" continued to run until the corrected Restriction Requirement was issued 197 days after the defective one. The Court DENIES Pfizer's Motion for Summary Judgment on the issue of PTA because the defects in the initial Restriction Requirement do not entitle Pfizer to an additional 197 days of "A–Delay," and the Court GRANTS Defendant Michelle Lee of the USPTO's Motion for Summary Judgment because the relevant statutory provision clearly and unambiguously provides that a notification, like a Restriction Requirement will "stop the clock" on the accumulation of "A–Delay," absent any requirement that the notice be free of defects.

## I. BACKGROUND

Prior to a recitation of the facts, it is a worthwhile exercise to discuss the statutory framework relevant to the case. Particularly, an overview of the patent application process, the term of a patent, and Patent Term Adjustment calculation are necessary to understand the analysis applied by the Court.

## A. STATUTORY FRAMEWORK

### 1. Patent Application Process

The patent application process begins with an applicant filing a patent application with the USPTO. 35 U.S.C. § 111(a). The patent application undergoes a process of examination to determine whether the requirements for patentability have been met. *Id.* § 131. Often the first official action of the USPTO is the issuance of a restriction requirement. *Id.* § 132.

A restriction requirement is issued when a patent examiner determines that a patent application contains two or more independent and distinct inventions. *Id.* § 121. The restriction requirement divides the claims presented in the application into multiple groups. One group can be pursued in the application where the restriction requirement is made, while the other group(s) can be pursued by filing one or more divisional applications. *Id.*

### 2. Term of a Patent

A patent's enforceability begins on the issue date of the patent and ends twenty years from the patent application's effective filing date, which is the earliest filing date for which priority is claimed. 35 U.S.C. § 154(a)(2). Accordingly, when a

divisional application results in a patent, its twenty year term is measured from the filing date of the parent patent application.

Because the examination process takes time, the enforceable lifetime of a patent is necessarily reduced by the amount of time it takes the USPTO to conduct the patent's examination. As such, Congress established patent term adjustments, or PTA, to compensate inventors for unreasonably long delays by the USPTO.

### a. Patent Term Adjustment Statute (35 U.S.C. § 154)

To understand the role of PTA in the enforceable life of a patent, it is important to understand the history of 35 U.S.C. § 154(b). Prior to 1994, before adoption of the General Agreement on Tariffs and Trade ("GATT"), a patent term was seventeen years from the issue date. *Novartis AG v. Lee*, 740 F.3d 593, 595 (Fed.Cir. 2014). In 1994, Congress changed the effective term of a patent from seventeen years commencing from issuance to twenty years commencing from filing.[1] *See* Uruguay Round Agreements Act, Pub.L. No. 103–465, § 532, 108 Stat. 4809, 4984 (1994). Under the seventeen-year regime, USPTO delays did not affect patent terms because a term commenced upon issuance rather than filing. Under the twenty-year regime, however, USPTO delays had the potential to consume the entirety of a patent's effective term. *See Wyeth v. Kappos*, 591 F.3d 1364, 1366 (Fed.Cir.2010).

Most recently, in 1999, the American Inventors Protection Act ("AIPA") amended 35 U.S.C. § 154(b) to address this problem and protect patent terms from the effects of USPTO delay. "The new Act promised patent applicants a full patent term adjustment for any delay during prosecution caused by the PTO." *Wyeth*, 591 F.3d at 1366. Under the amended statute, the USPTO calculates patent term adjustments by considering three classes of USPTO delay: (i) an "A–Delay," which awards PTA for delays arising from the USPTO's failure to act by certain examination deadlines; (ii) a "B–Delay," which awards PTA for an application pendency exceeding three years; and (iii) a "C–Delay," which awards PTA for delays due to interferences, secrecy orders, and appeals. The USPTO calculates PTA by adding the A-, B-, and C–Delays, subtracting any overlapping days, and then subtracting any days attributable to applicant delay. *Wyeth*, 591 F.3d at 1367.

A–Delay is applicable to this case. The relevant portion of the PTA Statute describing A–Delay provides as follows:

> (A) **Guarantee of prompt Patent and Trademark Office responses.**— Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to—

---

**1.** This change was partly a response to the problem of "submarine" patents. Submarine patents involve an applicant's use of delay tactics during patent prosecution to have a period of control over patents as late as possible to "maximize the economic returns from when the patent right is enforced." 3 Moys Walker on Patents § 11:20 (4th ed.2013); *see also Exelixis, Inc. v. Kappos*, 919 F.Supp.2d 689, 698 (E.D.Va.2013) *vacated and remanded sub nom. Exelixis, Inc. v. Lee*, 550 Fed.Appx. 894 (Fed.Cir.2014) ("The decision to measure the term of a patent from the date of filing

instead of the date of issuance was at least partly motivated by fear of so-called 'submarine' patents filed by applicants who had discovered that they could file 'continuation prosecution applications' (CPAs) to indefinitely delay the USPTO's completion of its examination, thereby keeping their applications 'pending and secret until an industry with substantial investment in the technology can be targeted in an infringement suit.' " (citing *House Panel Examines Bills on Patent Law Reforms*, 51 Pat. Trademark & Copyright J. (BNA) 50 (1995))).

**(i)** provide at least one of the notifications under section 132 [2] or a notice of allowance under section 151 not later than 14 months after—

**(I)** the date on which an application was filed under section 111(a);

. . .

the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

35 U.S.C. § 154(b)(1)(A).

The PTA Statute also accounts for delays by the patent applicant. PTA is reduced for a patent applicant's "fail[ure] to engage in reasonable efforts to conclude prosecution of the application." *Id.* § 154(b)(2)(C)(i). Section 154(b)(2)(C)(iii) explicitly provides that "[t]he Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." In addition to this grant of substantive rulemaking authority, the PTA Statute provides for general procedural rulemaking authority in section 154(b)(3)(A) stating that "[t]he Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection."

To the extent that an applicant is dissatisfied with the USPTO's determination of PTA, the PTA Statute grants the applicant one opportunity to request reconsideration of the PTA determination. *Id.* § 154(b)(3)(B)(ii). If an applicant is still dissatisfied following the USPTO's reconsideration of PTA, the applicant "shall have exclusive remedy by a civil action against the Director filed in the United States District Court for the Eastern District of Virginia within 180 days after the date of the Director's decision on the applicant's request for reconsideration." *Id.* § 154(b)(4).

## B. FACTS

Plaintiffs Pfizer, Inc. and Wyeth Holdings Corporation bring this action seeking judgment on five counts. Plaintiffs seek judgment on a patent term adjustment pursuant to 35 U.S.C. § 154 (Count I), Violation of the Fifth Amendment (Count II), and Declaratory Judgment under the Administrative Procedures Act, 5 U.S.C. § 702 et seq. (Count III and IV), and a Declaratory Judgment of Maximum Applicant Delay Under 35 U.S.C. § 154 (Count V). (Doc. 1.) Wyeth is the assignee of all rights, title and interest in U.S. Patent No. 8,153,768 (the "768 Patent"). (*Id.* ¶ 9.) Wyeth was acquired by Pfizer in 2009. (Doc. 29 ¶ 5.)

On May 2, 2003, Wyeth filed Patent Application No. 10/428,894 ("'894 Application") which issued as the '768 Patent on April 10, 2012. (*Id.*) As part of its application, and pursuant to 37 C.F.R. § 1.136(a)(3), Plaintiffs filed an authorization for the extension of time for its timely submission for the appropriate length of time during the pendency of the '894 application. (*Id.* ¶ 6.) In other words, the PTO was authorized to charge all required extension of fees during the entire pendency of the application. On July 28, 2003, the PTO mailed a Notice to File Missing Parts of Nonprovisional Application. (*Id.* ¶ 8.) Plaintiffs timely filed the missing parts of its application on December 8, 2003. (*Id.*) The statutory deadline for the PTO to issue its first office action expired on July

---

**2.** The USPTO counts the mailing of a restriction requirement as a "notification under 35 U.S.C. § 132" for purposes of calculating A-delay. 35 U.S.C. § 132 ("any claim for a patent is rejected, or any objection or requirement made")

2, 2004, fourteen (14) months from the date the application was filed. (*Id.*) On August 5, 2005, having received no office action, Plaintiffs sent a letter to the PTO asking when an office action on the merits might be expected. (*Id.* ¶ 9.)

On August 10, 2005, the PTO mailed a Restriction Requirement, 404 days after the July 2, 2004 deadline. (*Id.* ¶ 10.) The deadline for Plaintiffs to reply to the Restriction Requirement was extendable up to six months based on their previously filed authorization for extension of time. (*Id.*) Accordingly, the deadline for Pfizer to respond was February 10, 2006. (*Id.*) On February 6, 2006, Plaintiffs participated in a telephonic interview with the Examiner and explained that the Restriction Requirement was defective because it omitted claims 75, 76, 103–106. (*Id.* ¶ 12.) During the interview the Examiner acknowledged that the Restriction Requirement was defective and agreed to withdraw it and issue a corrected Restriction Requirement. (*Id.* ¶ 13.) This conversation is memorialized in a February 7, 2006 Interview Summary signed by the Supervisory Examiner. (*Id.* ¶ 14.)

The PTO issued a corrected Restriction Requirement on February 23, 2006, 601 days after the July 2, 2004 deadline of fourteen (14) months. (*Id.* ¶ 16.) Plaintiffs were given a new deadline to respond to the corrected Restriction Requirement, which was also extendable by up to six months. (*Id.*) On May 22, 2006 Plaintiffs filed a timely response. (*Id.* ¶ 17.)

Prosecution for the '894 application continued without interruption until October 11, 2011 when a Notice of Allowance [3] was issued. (*Id.* ¶ 18.) The PTO also mailed their Determination of Patent Adjustment as of that date for the '894 Application— 257 days. (*Id.*)

On January 10, 2012, Plaintiffs filed a petition requesting confirmation that the '894 application was not abandoned at any point during its pendency before the PTO or in the alternative a finding of revival so that the patent may issue. (*Id.* ¶ 19.) On March 7, 2012, the PTO dismissed the no abandonment petition and granted the revival petition. (*Id.* ¶ 21.) The petition decision incorrectly stated several facts, including the date of the interview with the Examiner. (*Id.* ¶¶ 21–22.) On April 10, 2012, the '894 application issued as the '768 patent, reflecting a patent term adjustment ("PTA") of 1291, including 404 days of "A–Delay." (*Id.* ¶ 23.) The PTA excluded the 197 days from the date of the first Restriction Requirement to the mailing of the corrected Restriction Requirement. (*Id.* ¶ 24.)

On May 30, 2012, Plaintiff filed a Request for Reconsideration asking the PTO to reverse its decision on the No Abandonment Petition. (*Id.* ¶ 25.) On June 7, 2012, the PTO again dismissed the No Abandonment Petition, finding it to be moot in view of the grant of the Revival Petition and the issuance of the patent. (*Id.* ¶ 26.) On August 7, 2012, Plaintiffs again filed a petition requesting reconsideration of the PTO's March 2012 and June 2012 decision on their No Abandonment Petition. (*Id.* ¶ 27.) On September 25, 2012, the PTO affirmed its previous March 2012 and June 2012 findings to which Plaintiffs now base their Complaint. (*Id.* ¶ 28.)

## II. PROCEDURAL HISTORY

Plaintiffs Pfizer, Inc. and Wyeth Holdings Corporation filed a Complaint on October 5, 2012, against David Kappos on behalf of the U.S. Patent and Trademark

---

**3.** A notice of allowance is issued by the United States Patent & Trademark Office to indicate that it believes an invention qualifies for a patent.

Office, seeking judgment that the patent term for U.S. Patent No. 8,153,768 (the "768 Patent") be altered to account for additional "A–Delay," which the Plaintiffs claimed was miscalculated by Defendants. (Doc. 1.) Additionally, Plaintiffs sought a judgment that the '768 patent was never abandoned. (*Id.*) On January 4, 2013, the parties moved to stay the proceedings pending a decision from the United States Court of Appeals for the Federal Circuit in *Smith v. Furlong,* 55 Fed.Appx. 894 (10th Cir.2014). The Court granted the stay on January 8, 2013. Subsequently, on April 14, 2014, the parties agreed to proceed with the action.

On June 13, 2014, Plaintiffs filed a Motion for Summary Judgment for a Determination of No Abandonment and to Correct the Patent Term Adjustment for U.S. Patent No. 8,153,768 (Doc. 28). On July 15, 2014, Defendant Michelle K. Lee on behalf of the USPTO filed a Motion for Summary Judgment and its Opposition to Plaintiffs Motion for Summary Judgment (Doc 32). Plaintiffs filed their Reply on July 29 (Doc 36). On August 8, Defendants filed a Consent Motion for Extension of Time to File their Reply to Plaintiffs Motion to Dismiss, so that the USPTO could reconsider its administrative decision on the abandonment of the '768 patent. The Court granted the extension and Defendants filed their Reply on August 18 (Doc. 40).

### III. STANDARD OF REVIEW

■ Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Normally, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[i]n a case involving review of a final agency action under the [APA] .... the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record." *Sierra Club v. Mainella,* 459 F.Supp.2d 76, 89 (D.D.C.2006). The USPTO's final determination of Patent Term Adjustment ("PTA") is reviewable under the standards set forth in the Administrative Procedure Act. 35 U.S.C. § 154(b)(4)(A); *see also Dickinson v. Zurko,* 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999).

■ Under the APA, this Court may only set aside the USPTO's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Star Fruits S.N.C. v. United States,* 393 F.3d 1277, 1281 (Fed.Cir.2005). The Court is therefore limited to the task of reviewing the agency action to determine whether the agency conformed to controlling statutes, and whether the agency has committed a clear error of judgment. *Holly Hill Farm v. United States,* 447 F.3d 258, 263 (4th Cir.2006). The "function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club,* 459 F.Supp.2d at 90.

■ Where an agency's interpretation is at odds with the plain language of an unambiguous statute no deference is afforded to that interpretation. *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 267, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (citations omitted). "If the intent of Congress is clear, that is the end of the mat-

ter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *City of Arlington v. FCC*, —— U.S. ——, 133 S.Ct. 1863, 1868, —— L.Ed.2d —— (2013) (internal citations omitted). However, when a court reviews a challenge to an agency's construction of an ambiguous statute administered by that agency, it will follow the two-step approach set out in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The U.S. Court of Appeals for the Federal Circuit, however, has held that with respect to USPTO regulations, "[b]ecause Congress has not vested the Commissioner with any general substantive rulemaking power," USPTO regulations "cannot possibly have the 'force and effect of law'," and "[t]hus, the rule of controlling deference set forth in *Chevron* does not apply." *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1550 (Fed.Cir.1996). While *Chevron* deference may not be warranted "where a party challenges a USPTO regulation that was established pursuant to the general procedural rulemaking authority of § 154(b)(3)(A), the USPTO's interpretation may be entitled to some deference." *Abraxis Bioscience, LLC v. Kappos*, 10 F.Supp.3d 53, 67–69 (D.D.C.2014) (granting *Skidmore* deference to USPTO regulation 37 C.F.R. § 1.703(b) because it was issued pursuant to statutory authority to address procedural issues in § 154(b)(3)(A)).

 Pursuant to *Skidmore v. Swift & Co.* an agency's decision will only receive deference based upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In other words, "the agency's position constitutes a

reasonable conclusion as to the proper construction of the statute." *Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed.Cir. 2005).

## IV. ANALYSIS

The Court DENIES Plaintiffs Pfizer and Wyeth's Motion for Summary Judgment and GRANTS Defendant Michelle Lee of the USPTO's Motion for Summary Judgment. Specifically, the Court DENIES Pfizer's Motion because the abandonment issue has since been mooted by the USPTO's withdrawal of its previous findings of abandonment and vacatur of its previous petition decisions on the issue. Additionally, the Court DENIES Pfizer's Motion because the defects in the initial Restriction Requirement do not entitle Pfizer to an additional 197 days of "A–Delay."

The Court GRANTS Defendant Michelle Lee of the USPTO's Motion for Summary Judgment because the plain language of 154(B) provides that the issuance of a Restriction Requirement stops the accumulation of "A–Delay."

## A. USPTO's Voluntary Decision to Withdraw its Administrative Finding of Abandonment Renders Plaintiffs' Claim of Abandonment Moot.

 The Court DENIES Pfizer's Motion because the abandonment issue has since been mooted by the USPTO's withdrawal of its findings on abandonment and vacatur of its previous petition decisions on the issue. Article III of the United States Constitution confers on federal courts jurisdiction over *cases* and *controversies*; both litigants must have personal stake in the case at the beginning of litigation, and their interests must persist throughout its entirety. U.S.C.A. Const. Art. 3, § 1 et seq. In other words, there must be a

continuing "case or controversy" for federal courts to have jurisdiction. A "claim for civil penalties must be dismissed as moot when the defendant, albeit after commencement of the litigation, has come into compliance." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 173–74, 120 S.Ct. 693, 145 L.Ed.2d 610 (U.S.2000). Further it is well settled that "mootness can arise at any stage of litigation." *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Plaintiffs' summary judgment motion requests that the Court find that the PTO's determination of abandonment was made in error. Specifically, Plaintiffs ask the Court to reverse the PTO's March 7, 2012, June 7, 2012, and September 25, 2012 petition decisions which concluded that Plaintiffs' petitions for reconsideration on abandonment were mooted by the subsequent revival of the abandoned application and the issuance of the '768 patent. On August 8, 2014, Defendants filed a Consent Motion for Extension of Time to File a Reply/Response arguing that the PTO intended to reconsider its position on abandonment regarding the '894 application. (Doc. 38.) On August 15, 2014, the USPTO voluntarily elected to vacate its previous administrative decisions and withdraw its previous abandonment findings. (Doc. 40, at 4.) Accordingly, because the USPTO has voluntarily provided Plaintiffs with the very relief that they request in this motion and there is no present controversy, the Court holds that Plaintiffs' claim concerning the USPTO's finding of abandonment is moot.

**B. Plaintiffs are not Entitled to Additional "A–Delay" as a Result of the Defective First Restriction Requirement.**

The Court GRANTS Defendant Michelle Lee's Motion for Summary Judgment because the plain language of 154(B) provides that the issuance of a Restriction Requirement stops the accumulation of "A–Delay." In construing a statutory provision, a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc, Ltd. v. United States,* 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004). The relevant statutory provision, 35 U.S.C. § 154(b)(1)(A), provides

(A) **Guarantee of prompt Patent and Trademark Office responses.**— Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to—

(i) provide at least one of the notifications under section 132 or a notice of allowance under section 151 not later than 14 months after—

(I) the date on which an application was filed under section 111(a); or

(II) the date of commencement of the national stage under section 371 in an international application.

The statute is unambiguous on its face.

Plaintiffs argue that the PTO's calculation of "A–Delay" cannot be reconciled with the words of the statute. Pfizer contends that the first Restriction Requirement, which was defective, should be treated as a non-event, or rather that the "A–Delay" should instead be calculated from the time the PTO sent the corrected Restriction Requirement. Further, Plaintiffs rest on the PTO's acknowledgment that the Restriction Requirement was incorrect. In support of their argument for correction of the patent term adjustment, Plaintiffs also point to the PTO's May 24, 2012 Decision on Application for PTA in *Oncolytics.* Plaintiffs' arguments on this point are not persuasive.

Plaintiffs' argument that the defective Restriction Requirement should not stop the "A–Delay" clock is contrary to the plain meaning of the statute. The language of the statute requires only that the PTO "provide at least one of the notifications under section 132," in order to stop the clock. As the U.S. District Court for the District of Columbia found in *University of Massachusetts v. Kappos (UMass )*, stoppage of the "A–Delay" clock is not dependent on the ultimate accuracy of the office action. 903 F.Supp.2d 77 (2012). Specifically the Court held that

> Under § 154(b)(1)(A), "A delay" is calculated based on the time that passes between the fourteen-month deadline and the mailing of the first Office action. The statute does not require that the first Office action be correct. The statute does not require that the first Office action ultimately stand, either completely unaltered or with only minor tweaks. The statute does not award additional A delay if an applicant successfully convinces the PTO that the Office action was erroneous.

> * * *

Plaintiffs do not dispute, nor can they, that "an action" is clearly defined under 35 U.S.C. § 132 as a rejection, an objection, or a requirement.[5] And plaintiffs do not dispute that a requirement was issued in this case on July 13, 2007. Therefore, the PTO correctly interpreted the statute to find that the period of A delay ends on that date. For the PTO or the Court to take into account whether the restriction requirement was subsequently modified or reversed would be to rewrite the statutory provisions regarding A delay in contravention of well-established law. *Blount v. Rizzi*, 400 U.S. 410, 419, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971) (". . . it is for Con-

gress, not this Court, to rewrite the statute. . . .").
*Kappos*, 903 F.Supp.2d at 86–87.

Similar to the plaintiffs in *UMass*, here, Plaintiffs' interpretation runs contrary to the plain meaning of the statute. Plaintiffs' argument that the holding in *UMass* was meant to be narrowly construed and only applied to the facts of that case are meritless. Though the PTO acknowledged that the first Restriction Requirement was defective and issued a corrected one, these actions alone do not suffice to disregard the clear language of the statute.

Plaintiffs' reliance on the PTO's decision is *Oncolytics* is also unpersuasive. In *Oncolytics*, the Examiner issued a Restriction Requirement with a proposed grouping of claims, similar to the Restriction Requirement here. (Doc. 29 Ex. M.) Applicants in *Oncolytics*, timely filed a written response which contained a different grouping of claims. (*Id.*) The Examiner adopted Oncolytics' proposed grouping and issued a new office action rejecting the elected claims on the merits. (*Id.*) Subsequently, the Examiner issued another office action but reversed course, rejecting Oncolytics' regrouping, and instead adopting the original groups set forth in the initial Restriction Requirement. (*Id.*) The applicants in *Oncolytics* sought a Patent Term Adjustment which the PTO granted, finding that the facts presented, "constitute[d] the rare occurrence in which it is appropriate for the USPTO to treat an office action issued in an application as a non-event." (*Id.* at 4.)

As the district court found in *UMass*, the PTO's actions in *Oncolytics* "were anomalous and caused significant delay at applicant's expense." *UMass*, 903 F.Supp.2d at 89. The court in *UMass* distinguished *Oncolytics* finding that the PTO's immediate responsiveness for a revised Restriction Requirement was a "meaningful distinction" between the two cases. Here,

similar to *UMass* and contrary to *Oncolytics*, the PTO immediately provided a revised Restriction Requirement. Accordingly, Plaintiffs are not entitled to 197 additional "A–Delay" days as a result of the defective first Restriction Requirement.

## V. CONCLUSION

The Court DENIES Pfizer's Motion for Summary Judgment on the issue of PTA because the defects in the initial Restriction Requirement do not entitle Pfizer to an additional 197 days of "A–Delay," and the Court GRANTS Defendant Michelle Lee of the USPTO's Motion for Summary Judgment because the relevant statutory provision clearly and unambiguously provides that a notification, like a Restriction Requirement will "stop the clock" on the accumulation of "A–Delay," absent any requirement that the notice be free of defects. Accordingly, it is hereby.

**ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 28) is **DENIED;** and it is further

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 32) is **GRANTED.**

The clerk is **ORDERED** to close the case.

**IT IS SO ORDERED.**